## Case No. 12,716.

### In re SHAW.

[See 9 Fed. 495.]

SHAW (BANK v.). See Case No. 843.

## Case No. 12,717.

SHAW et al. v. The BRIDGEPORT.

[1 Ben. 65.] [1]

District Court, E. D. New York. June, 1866. [2]

COLLISION—AT PIER—FOG—INEVITABLE ACCIDENT—MIDDLE OF RIVER.

1. Where a steamboat was coming down the East river round Corlear's Hook, and a thick fog shut down upon her, and not being able to anchor, the bottom being bad, and the place dangerous by reason of the ferries, she slowed her speed to the lowest point, and proceeded, having two lookouts stationed forward, running by compass till opposite the Grand St. Ferry, whose lights they saw and whose bells they heard, and her master then commenced to turn her, taking a course which he thought

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

[2] [Affirmed by circuit court. Case No. 1,861. Decree of the circuit court affirmed by supreme court in 14 Wall. (81 U. S.) 116.]

would carry her pretty close to the piers below, but would clear them, and though at once stopping and backing when the lookout reported a vessel ahead, ran into the vessel which was lying alongside of a pier below the Hook. *Held,* that this was not a case of inevitable accident.

2. Prudence, to say nothing of the state law, required the master to take such a course as would bring the steamboat into the middle of the river below the Hook, and the collision was occasioned by that error on his part.

[This was a libel by George Shaw and others against the steamboat Bridgeport (Charles Weeks and Robert Haydock, claimants), to recover damages sustained by collision.]

D. D. Lord, Esq., for libellants.
E. H. Owen, Esq., for claimant.

BENEDICT, District Judge. This action is brought by the owners of the ship Margaret Evans, to recover some fourteen thousand dollars, being the amount of damages sustained by that ship in a collision which occurred in this port on the 4th of September last.

There is little or no dispute as to the facts of the case, which are these. The Margaret Evans was lying alongside the pier at the foot of Corlears street, and wholly inside the line of the piers below the Hook. While so moored, and between three and four o'clock in the morning, she was run into by the Bridgeport while she was proceeding down the river to her pier at Peck Slip, in a thick fog. It appears that when the steamboat passed Blackwell's Island, the fog, which had come on during the night, lifted so that both shores could be seen; but when she arrived off Houston Street ferry, it suddenly shut down upon her so thick that it was impossible to see objects at any considerable distance. The speed of the steamboat was at once slowed down to the lowest point, and she proceeded on her voyage; the bottom there being unfit for anchorage and the place dangerous, by reason of the ferries.

As she proceeded she had one chief mate, in addition to a regular look-out, stationed forward, and her master was in the wheelhouse with the wheelsman. Just after she passed Grand Street ferry the look-out saw and reported a vessel ahead, when the engine was instantly reversed; but before more than one and a half turns back could be made, she brought up square upon the starboard side of the vessel ahead, which proved to be the Margaret Evans, lying alongside of the pier as above described. The look-outs were competent persons, and saw the vessel at the earliest possible moment. The engine was in good order, and was reversed as soon as possible after the

ship was reported. The speed was as low as she could run and have steerage way. The fog was very thick, but the Grand Street ferry light was seen by the mates of the steamer as she passed the ferry, and after that a light upon the New York shore. The Grand Street bells were also ringing.

These circumstances, the claimants insist, make out a case of inevitable accident. But to this view I cannot give my assent. To make out a case of inevitable accident it must appear that the collision could not have been avoided by the exercise of ordinary care, caution and maritime skill. Here it appears that the Grand Street lights and bells which were 260 feet only from the point of the Hook, and some 900 feet from the Margaret Evans, were seen and heard, and the position of his vessel was then known to the master, as he had seen, by compass from opposite Houston Street ferry, where he was in the middle of the river, and my opinion is that those lights and bells were sufficient to enable any master, by the exercise of ordinary maritime skill, to pass the Hook in safety and at the proper place.

Furthermore, the wheelsmen say, that after they struck the fog they ran by compass till opposite the Grand Street ferry light, which they saw; that they commenced to turn, and took a course which they supposed would carry them pretty close to the piers below the Hook, but yet, as they believed, far enough out to clear vessels lying at them.

This was clearly negligence; for prudence, to say nothing of the state law, required them in such a fog to take a course which would bring them in the middle of the river below the Hook. To accomplish this it was necessary to run some lengths below the Grand Street ferry before commencing to turn, as the master must have known, instead of which he hauled in when opposite the Grand Street ferry, and took a course which he knew was carrying him inside of the middle of the river, and close to the piers.

Had the effort been made to keep in the middle of the river, I doubt not but that it would have been successful, notwithstanding the density of the fog.

The decree must accordingly be for the libellants, with an order of reference to ascertain and report the amount of the damages resulting from the collision.

[This decree was affirmed by the circuit court on appeal. Case No. 1,861. An appeal was then taken to the supreme court, where the decree of the circuit court was affirmed. 14 Wall. (81 U. S.) 116.]